UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RICHARD ANTHONY          )
KAMINSKY,                )
                         )
        Plaintiff,       )
                         )
    vs.                  )          Case No. 4:05CV1112 CDP
                         )
SAINT LOUIS UNIVERSITY   )
SCHOOL OF MEDICINE,      )
                         )
        Defendant.       )

## MEMORANDUM AND ORDER

Plaintiff Dr. Richard Anthony Kaminsky alleges that he was not hired into

Saint Louis University School of Medicine's (SLU) pathology residency training

program for the years 2005-2006 and 2006-2007 because of his disability and his

religion.  Dr. Kaminsky also claims that SLU retaliated against him for his stated

intent to file a charge of discrimination with the Equal Employment Opportunity

Commission (EEOC) by influencing St. Elizabeth's Hospital in Belleville, Illinois to

not hire him.  Dr. Kaminsky seeks relief under the Americans with Disability Act

(ADA), 42 U.S.C. § 12112(a), and Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e, et seq.

SLU claims that it failed to hire Dr. Kaminsky for numerous reasons,

including his medical license suspensions in Missouri and Illinois, criminal conduct,

failure to provide a complete residency application, and past unprofessional conduct. Further, SLU contends that it had no knowledge of Dr. Kaminsky's intent to file a charge of discrimination and thus could not have retaliated against him.

SLU has moved for summary judgment on each of Dr. Kaminsky's claims. Even if I assume that Dr. Kaminsky could establish a prima facie case of religious and disability discrimination, he has failed to present any evidence that would suggest that SLU's proffered reasons for its failure to hire him are pretextual or otherwise unworthy of credence. Further, Dr. Kaminsky's retaliation claim fails because there is no evidence that the SLU decision-makers were aware of his intent to file a charge of discrimination. Because there are no genuine issues of material fact and the undisputed evidence shows no impermissible motive, I will grant SLU's motion for summary judgment.

## Background

Dr. Kaminsky received his doctorate of osteopathic medicine in 1998 from the University of Missouri at Kansas City. He then completed two years of a pathology residency training program at Wake Forest University in North Carolina. In July, 2000, Dr. Kaminsky transferred to the pathology residency training program at SLU. According to Dr. Kaminsky, his transfer to SLU was motivated by martial problems he was having with his then-wife in North Carolina. He testified that he

had previously met Dr. Carole Vogler, the director of SLU's pathology program, and called her to see if he could transfer to SLU. He told her the reason he wanted to move was because he wanted to separate from his wife. Dr. Vogler was among those at SLU who agreed to hire him in 2000.

Shortly after his arrival at SLU, Dr. Kaminsky's instructors began indicating their concern that he did not possess the requisite skills and aptitude necessary to succeed in the program. They reported problems both of competence and of attitude. Dr. Kaminsky alleges that he began experiencing psychiatric symptoms of aggression while at SLU due to his martial problems, the separation from his young daughter, and the harsh environment at SLU. He alleges that his supervisors and others harassed him because SLU, as an organization associated with the Catholic Church, did not approve of his divorce. It is undisputed that Dr. Vogler, who was then Dr. Kaminsky's supervisor, met with him on multiple occasions to discuss his work performance. Dr. Kaminsky characterizes these conversations as "near daily unwanted meetings" in which Dr. Vogler would pry into his personal problems. Dr. Vogler admits that she discussed Dr. Kaminsky's impending divorce with him on multiple occasions, but only because his martial problems were affecting his work performance, not because she believed Dr. Kaminsky, as a Catholic, was wrong to seek a divorce.

Dr. Vogler referred Dr. Kaminsky to Teri McCarthy, the director of SLU's Employee Assistance Program (EAP). SLU's EAP is designed to help post-graduate trainees with personal and work-related issues as well as provide short-term counseling on a confidential basis. Dr. Kaminsky met with Ms. McCarthy several times regarding his poor work reviews. His work reviews did not improve, and as a result, SLU placed Dr. Kaminsky on probationary status on February 16, 2001. In July, 2001, SLU chose not to elevate Dr. Kaminsky to fourth-year resident status, but instead offered him a four-month contract extension at the third-year resident pay grade. This contract was not renewed, and Dr. Kaminsky's training at SLU officially ended on or around October 31, 2001.

During Dr. Kaminsky's residency at SLU and thereafter, Dr. Vogler and Dr. Robert Heaney, SLU's Associate Dean of Graduate Medical Education, observed what they perceived as unprofessional conduct on the part of Dr. Kaminsky. Among other things, Dr. Kaminsky made obscene phone calls and sent intimidating letters sent to Drs. Vogler and Heaney and their staffs. Dr. Kaminsky does not deny this conduct. He admits that he may have done things that were perceived as "scary," "hostile," and "aggressive" by SLU's employees, but contends that his conduct was caused by the oppressive and abusive environment that SLU had created for him.

In January, 2002, the Missouri Department of Health and Senior Services' Bureau of Narcotics and Dangerous Drugs (BNDD) received a complaint which alleged that Dr. Kaminsky self-prescribed a controlled substance, Phentermine, under the alias Richard Johnston on two separate occasions in September and October, 2001. Dr. Kaminsky did not dispute these allegations, and as a result, the BNDD issued him a Letter of Censure on January 30, 2002. Although the wrongful conduct occurred while Dr. Kaminsky was employed at SLU, it did not come to light until after he left. He was ultimately charged in St. Louis County with two counts of fraudulently obtaining or attempting to obtain a controlled substance, a class D felony. He pled guilty to reduced misdemeanor charges in 2004, although SLU did not learn of the Missouri criminal charges until discovery in this case. SLU has presented uncontested evidence that it would have considered the underlying conduct to be grounds for discharge, had it known that he had written fraudulent prescriptions while employed by SLU.

Beginning on June 24, 2002, Dr. Kaminsky participated in a Transitional Internship Program at Forest Park Hospital in St. Louis. Dr. Kaminsky's supervisor in the program was Dr. Robert Hill. On October 24, 2002, Dr. Hill was informed by the BNDD that Dr. Kaminsky's federal and state controlled substance registrations had been revoked due to the drug charges pending against him. Dr. Kaminsky was

dismissed from Forest Park's program on November 1, 2002. The dismissal was based in part on the registration revocations and Dr. Kaminsky's failure to cooperate with the hospital's investigation of the matter, as well as on other instances of unprofessional conduct observed by staff there.

In December, 2002, Dr. Kaminsky was charged with six counts of criminal conduct, including harassment by telephone, violation of an order of protection, and obstructing a peace officer in St. Clair County, Illinois. These charges arose out of his harassment and threatening a former girlfriend, violating an order of protection she had obtained against him, and then threatening a witness. The trial judge found Dr. Kaminsky unfit to stand trial and admitted him to a state mental hospital in Alton, Illinois. Dr. Kaminsky was treated for hypothyroidism and psychosis in Alton until his release on June 10, 2003. That same month, Dr. Kaminsky pled guilty to the six misdemeanor charges pending in St. Clair County and was sentenced to two years probation.

On March 21, 2003, Dr. Kaminsky's license to practice medicine in Illinois was suspended due to his failure to submit to a mental or physical examination. On September 8, 2003, his license to practice medicine in Missouri was suspended for

three years or until the Missouri State Board of Registration for the Healing Arts[1] deemed him fit to return to practice. The Missouri license suspension arose from a Joint Stipulation of Facts entered into between the Board and Dr. Kaminsky which established cause to discipline Dr. Kaminsky based upon his guilty pleas to the St. Clair County charges.

After his Missouri medical license was suspended, Dr. Kaminsky sought the assistance of the Missouri Physicians Health Program (MPHP), a program designed to assist physicians with medical license problems. Robert Bondurant, the Program Coordinator of MPHP, assisted Dr. Kaminsky in his efforts to have his Missouri license reinstated. On October 15, 2004, the Board reinstated Dr. Kaminsky's medical license on a probationary status for the purpose of completing a residency training program. Due to a clerical error, however, Dr. Kaminsky's probationary reinstatement in October, 2004, was not available to the public via the Missouri State Board of Professional Registration's website until at least October, 2005.

Once Dr. Kaminsky's Missouri license had been reinstated, Mr. Bondurant contacted area medical schools on Dr. Kaminsky's behalf to determine what his prospects were for completing his residency. In this effort, Mr. Bondurant

---

[1]The Missouri State Board of Registration for the Healing Arts is the state's licensing and regulatory authority for physicians and surgeons.

contacted Ms. McCarthy at SLU in the fall of 2004.  Ms. McCarthy informed Mr.

Bondurant that, in her opinion, Dr. Kaminsky would not be welcome back at SLU

due to his past unprofessional behavior.

Dr. Kaminsky nevertheless submitted an application for SLU's 2005-2006

pathology residency training program in December, 2004.  In his application he did

not reveal that he had an Illinois license that was suspended, and he falsely stated

that his Missouri license had been suspended because of a medical illness, instead of

revealing that the suspension was a result of the Illinois criminal charges.  He also

did not list his experience at Forest Park Hospital or indicate  that he had been

discharged from that program.  The form asked if he had any felony convictions, and

he answered "No," which was a truthful response.  The form did not ask about

misdemeanor convictions or other charges.

Dr. Vogler chose not to interview or rank Dr. Kaminsky for a position in its

pathology residency program in 2005-2006.[2]  According to Dr. Vogler, she

determined that Dr. Kaminsky was not eligible for SLU's program for a variety of

reasons, including his past unprofessional conduct at SLU and his medical license

---

[2]SLU participates in the National Resident Matching Program, which allows students and program directors to rank their preferred programs and students, respectively.  Students register for the match program between August and December, and candidate interviews take place in January.  From mid-January through February, candidates and programs submit their preferences. In the third week of March, the results of the match are announced.

suspensions. On March 15, 2005, Dr. Kaminsky learned that he did not match with SLU. That same day, he contacted Dr. Charles Robacker, director of the family medicine residency training program at St. Elizabeth's Hospital in Belleville, Illinois, and scheduled an interview for the next day. St. Elizabeth's family medicine program is institutionally-sponsored by SLU, and is an integral part of SLU's Graduate Medical Education Program.

Dr. Kaminsky also contacted Mr. Bondurant of the Missouri Physicians Health Program that day, and informed him that he intended to file a charge of discrimination against SLU based on his failure to match into SLU's program. Mr. Bondurant became very upset, and advised Dr. Kaminsky not to file the charge. Dr. Kaminsky alleges that Mr. Bondurant then called Ms. McCarthy at SLU and informed her of Dr. Kaminsky's intent to file a charge of discrimination. Mr. Bondurant and Ms. McCarthy both deny that such a conversation took place, and Dr. Kaminsky has not presented any evidence to contradict their testimony. On March 16, Dr. Kaminsky was informed by Dr. Robacker's staff that his interview at St. Elizabeth's had been cancelled and would not be rescheduled. Dr. Kaminsky claims that he asked Dr. Robacker's assistant whether the decision was based on input from SLU, and she replied "you can be certain that it was."

Dr. Kaminsky filed a charge of discrimination with the EEOC and the

Missouri Commission on Human Rights on April 25, 2005, and received a right to sue letter on June 15, 2005. On July 18, 2005, he filed this suit. In addition to the claims of religious and disability discrimination and retaliation addressed in this motion, his complaint also stated claims for hostile work environment and wrongful termination arising out of his 2000-2001 tenure at SLU. I dismissed those claims as time-barred in my September 29, 2005 Order. Dr. Kaminsky has repeatedly asked me to reconsider that ruling, arguing that the harassment by SLU while he was employed there, the 2001 termination, and the recent refusals to rehire him are part of a "continuing violation." He also contends that his criminal conduct cannot be considered by the court (and could not be considered by SLU), because that conduct was caused by SLU's on-the-job harassment of him.

On January 19, 2006, Dr. Kaminsky filed a supplemental complaint which added claims of disability and religious discrimination as well as retaliation regarding SLU's failure to hire him for the 2006-2007 pathology residency training program. According to the complaint, Dr. Kaminsky submitted an application for this program in May, 2005, but was not hired.

## Discussion

The standards for summary judgment are well settled. In determining whether summary judgment should issue, the Court views the facts and inferences

from the facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 323.

### 1. Disability and Religious Discrimination

Dr. Kaminsky claims that SLU's decision not to hire him into its pathology residency training program for the years 2005-2006 and 2006-2007 was based on his alleged disability and his past divorce. His claims are not founded on any direct evidence of discrimination, but instead rest on his perceptions of bias on the part of Dr. Vogler. Under these circumstances, Dr. Kaminsky's failure to hire claims must be analyzed under the burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Simpson v. Des Moines Water

Works, 425 F.3d 538, 542 (8th Cir. 2005) (ADA claim); Seaworth v. Pearson, 203

F.3d 1056, 1057 (8th Cir. 2000) (religious discrimination claim).

Under this framework, Dr. Kaminsky bears the initial burden to establish a

prima facie case of either disability or religious discrimination discrimination. To

establish a prima facie of disability discrimination, Dr. Kaminsky must show that (1)

he is disabled within the meaning of the ADA; (2) he is qualified, with or without

reasonable accommodation, to perform the essential functions of his job; and (3) he

suffered an adverse employment action on account of his disability. Simpson, 425

F.3d at 542 (citing Henderson v. Ford Motor Co., 403 F.3d 1026, 1034 (8th Cir.

2005)). To state a prima facie case of religious discrimination under these

circumstances, Dr. Kaminsky must demonstrate that (1) he was subjected to an

adverse employment action; (2) at the time the employment action was taken, his

job performance was satisfactory; and (3) that some evidence exists to support the

inference that the employment action was taken in response to the employee's

failure to live up to the employer's religious expectations. Shapolia v. Los Alamos

Nat'l Lab., 992 F.2d 1033, 1037-38 (10th Cir. 1993); Venters v. City of Delphi, 123

F.3d 956, 972 (7th Cir. 1997).

Once a plaintiff makes a prima facie case of either disability or religious

discrimination, the burden then shifts to the employer to articulate a legitimate, non-

discriminatory reason for its failure to hire the plaintiff.  Simpson, 524 F.3d at 542; Seaworth, 203 F.3d at 1057.  The defendant's burden is one of production, not proof.  Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-55 (1981); Krenik v. County of Le Sueur, 47 F.3d 953, 958 (8th Cir. 1995).  The defendant need not persuade the Court, rather, it must simply provide some evidence of a non-discriminatory reason or reasons for its action.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 509 (1993).

Once the employer meets its burden of showing a legitimate non-discriminatory reason for its actions, the plaintiff must come forward with some evidence to show that the proffered reasons are a pretext for discrimination. Simpson, 524 F.3d at 542; Seaworth, 203 F.3d at 1057.  The employee may prove pretext directly, by showing that employer was more likely motivated by a discriminatory reason, or indirectly, by showing that its explanation is unworthy of credence.  Rose-Maston v. NME Hospitals, Inc., 133 F.3d 1104, 1108 (8th Cir. 1998).

The factual record in this case is voluminous.  SLU has produced documents, depositions and affidavits.  While Dr. Kaminsky has produced some exhibits, he relies mainly on his own unsworn allegations to oppose summary judgment.  I will overlook his procedural shortcomings, however, and will consider his allegations as

if they were his own sworn testimony, and I will consider the evidence he submitted in support of his own motion for summary judgment as well as that he submitted in response to the defendant's motion. Even so, of course, to the extent his allegations are hearsay or otherwise concern things of which he has no direct knowledge, they are not admissible and cannot be relied upon. I am deciding this case on the merits, and not on any issues related to Dr. Kaminsky's failure to follow court rules.

I will analyze the discrimination claims at the last stages – that is, I will consider whether the undisputed facts show that SLU had non-pretextual, legitimate, non-discriminatory reasons for its actions. I will not, therefore, decide whether Dr. Kaminsky has shown a prima facie case. I do this because the evidence on these issues is straightforward, and there are no genuine disputes about any of the material facts relating to legitimate reasons and pretext. This analysis shows that even if Dr. Kaminsky had made the required prima facie case, SLU would still be entitled to judgment as a matter of law.

The undisputed facts easily show that SLU had legitimate non-discriminatory reasons for its decision not to rehire Dr. Kaminsky. The affidavits of Drs. Vogler and Heaney articulate many reasons for the employment decision, and Dr. Kaminsky has presented no competent evidence to contest the material facts set out in those affidavits. As Dr. Vogler explained in her affidavit, SLU's hiring process is

governed by the Accreditation Counsel for Graduate Medical Education (ACGME) standards, which require participating institutions to select residency candidates based on "their preparedness, ability, aptitude, academic credentials, communication skills, and personal qualities such as motivation and integrity." SLU believed Dr. Kaminsky failed to meet these standards for both his 2005-2006 and 2006-2007 applications for a number of reasons, including his medical license suspensions, criminal conduct, incomplete and falsified applications, and his past unprofessional conduct at SLU, which included obscene phone calls and threatening letters to SLU staff.[3]

Since the undisputed factual record shows that SLU had legitimate, non-discriminatory reasons for not rehiring Dr. Kaminsky, I must then turn to the record to see if there is any evidence to support Dr. Kaminsky's burden of demonstrating that these proffered reasons are a pretext for discrimination. Viewing the facts and inferences from the facts in the light most favorable to Dr. Kaminsky, I find no

---

[3]The legitimate, non-discriminatory reasons provided by SLU for its failure to hire Dr. Kaminsky in 2005-2006 and 2006-2007 are identical with one exception. As will be explained in more detail later in this discussion, Dr. Vogler did not chose to hire Dr. Kaminsky in 2005-2006, in part, because she believed his Missouri medical license was suspended. By the time Dr. Kaminsky applied for the 2006-2007 program, Dr. Vogler no longer believed his Missouri medical license was suspended, and thus Dr. Vogler did not rely on this as a grounds for choosing not to hire him that year. This distinction makes little difference in my analysis, however, because the majority of the reasons SLU had for not hiring Dr. Kaminsky in 2006-2007 are the same as those that SLU relied on when it considered his 2005-2006 application.

evidence that creates a reasonable inference that his alleged disability or divorce was a determinative factor in SLU's decision not to hire him, nor do I find any evidence that could support an inference of pretext. There is a complete failure of proof of pretext.

As a general matter, Dr. Kaminsky has offered nothing, other his own speculation, to contest the validity or veracity of SLU's stated reasons for not hiring him. He concedes that at the time Dr. Vogler reviewed his 2005-2006 program application, both his Missouri and Illinois medical licenses were listed as suspended on the relevant state websites. All parties agree that the Missouri website was not accurate at that time, and that Dr. Kaminsky's Missouri license had indeed been reinstated on a probationary basis several months before his application was submitted. This error on the state website does not render Dr. Vogler's reliance on the information pretextual. It was not unreasonable for her to rely on the website, nor was it unreasonable for her to believe the information on the website over Dr. Kaminsky's contrary assertions in his application. This is especially true given that she knew some of his assertions in the application were false. In the end, the issue I must decide is not whether Dr. Vogler was correct in her assumptions, but whether she conducted a thorough investigation and made her decision reasonably and in good faith. Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 855 (8th Cir. 2005). See

also Wheeler v. Aventis Pharmaceuticals, 360 F.3d 853, 859 (8th Cir. 2004) (explaining that the inquiry is not whether the employer's decision was correct or wise but only whether it was the real reason for the termination). The undisputed record shows that she made her decision reasonably and in good faith.

Dr. Kaminsky claims that Missouri and Illinois medical licenses are not prerequisites for admission in SLU's program. He argues that many medical school graduates apply for, and are accepted into, SLU's pathology residency training program without valid Missouri medical licenses. In her affidavit, Dr. Vogler conceded this point, but pointed out a crucial difference between Dr. Kaminsky's situation and the majority of those applicants who do not possess a valid medical license. She explained that an applicant who has never been licensed (e.g., a recent medical school graduate) is eligible for a position at SLU if the applicant could become licensed prior to beginning the program. An applicant with a suspended license, however, is ineligible because (1) his censure by a medical board demonstrates that he lacks the requisite qualities for admission, and (2) it is uncertain whether the suspension will be lifted prior to commencement of the residency program. Dr. Vogler, as the director of SLU's program, has personal knowledge of these policies, and Dr. Kaminsky has presented no evidence to suggest that her explanation is unworthy of credence.

Similarly, Dr. Kaminsky contends that Dr. Vogler's reliance on the status of his Illinois license was a cover for discrimination. In her affidavit, Dr. Vogler indicated that Dr. Kaminsky's Illinois suspension rendered him ineligible for SLU's program because an integral part of the residency program is a rotation in Illinois. Dr. Kaminsky disagrees, and argues that any rotation in Illinois is elective, not required. Dr. Kaminsky offers no support for his position, just his own self-serving allegations. That, alone, is insufficient to contest Dr. Vogler's explanation. See Simpson, 425 F.3d at 543 ("[A]llegations and speculation are insufficient to survive summary judgment without facts to support them."). In sum, Dr. Kaminsky has failed to produce any evidence from which I can infer that Dr. Vogler's reliance on Dr. Kaminsky's license suspensions was unreasonable, pretextual, or otherwise suggestive of a discriminatory motive.

The same is true for the other legitimate, non-discriminatory reasons articulated by Dr. Vogler. Dr. Vogler also found Dr. Kaminsky ineligible for SLU's program because he failed to submit a complete and accurate application. Notably, Dr. Kaminsky failed to disclose his internship at Forest Park Hospital, his Illinois license suspension, and the real reason for his Missouri license suspension. Dr. Kaminsky did indicate in his application that he had a "Medical License Problem," but he listed that problem as a license suspension in Missouri "due to a mental

illness," not due to the Illinois criminal charges. Under the circumstances, it was entirely reasonable for Dr. Vogler to conclude that evasive, if not deceptive, answers in Dr. Kaminsky's application indicated that he did not meet the requisite qualities of integrity, honesty, and truthfulness that an applicant should have.

Dr. Vogler also concluded that Dr. Kaminsky's misdemeanor charges in Illinois made him ineligible for admission into SLU's program.[4] Dr. Kaminsky argues that because the application only asks for "Felony Convictions," SLU was not allowed to consider Dr. Kaminsky's misdemeanor convictions. Further, Dr. Kaminsky argues that SLU cannot hold his misdemeanor convictions against him because SLU's harassment and failure to diagnose his mental condition in 2000-2001 caused his criminal behavior. Both of these arguments are unavailing.

"The employment discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers." Hutson v. McDonnel Douglas Corp., 63 F3d 771, 781 (8th Cir. 1995). Thus, if SLU does not wish to hire an applicant because of that applicant's past misdemeanor charges – charges which the

---

[4]Although the record establishes that Dr. Kaminsky was charged with felony drug charges in Missouri as well, Dr. Vogler did not know of these charges at the time she reviewed his 2005-2006 and 2006-2007 applications. These Missouri charges were only discovered in the course of discovery.

Missouri Board of Healing Arts found significant enough to justify a suspension of Dr. Kaminsky's medical license – SLU is entirely free to do so. There is no evidence that SLU's consideration of Dr. Kaminsky's misdemeanor charges was a departure from its normal practices, nor is there evidence that SLU has admitted other applicants with criminal histories similar to Dr. Kaminsky's. While the national form application only asked applicants to list felony convictions, this does not render the consideration of other criminal conduct discriminatory.

Dr. Kaminsky's arguments that all of his legal problems were the result of SLU's conduct toward him during his employment are not supported by any evidence, and are fanciful, if not frivolous. He argues that SLU caused his mental illness, but he has no medical support for this claim. He argues that because SLU referred him to the EAP, it had a duty to diagnose and treat him, but there is no legal or evidentiary support for this either. Finally, he argues that the criminal acts he committed were a result of SLU's bad conduct toward him. The Illinois criminal acts – harassing a former girlfriend over the telephone and at her job, violating an order of protection, and threatening a witness – had no connection to his employment at SLU and cannot reasonably be said to have been "caused" by SLU's acts. Dr. Kaminsky's speculation that all of his problems are because SLU did not like him because of his divorce is just that – pure speculation. Dr. Kaminsky cannot

somehow pass the blame for his criminal conduct to SLU.

Finally, Dr. Vogler found that Dr. Kaminsky's past unprofessional conduct towards her and her staff rendered him ineligible for further pathology residency training at SLU. Dr. Kaminsky admits that he was aggressive around SLU's staff during his previous enrollment. He also admits that some employees at SLU may be "scared" of him. Nevertheless, he contends that his previous conduct is not a legitimate basis on which to deny him re-admission into SLU's program because his behavior "was actually caused, amplified and perpetuated" by SLU. Dr. Kaminsky believes that his unprofessional behavior at SLU was nothing more than self-defense against the oppressive and abusive environment that Dr. Vogler and her staff had created for him. Once again, there is simply no support for this claim, just as there is no requirement that an employer rehire an employee who has demonstrated the lack of professionalism shown here. Regardless of "who started it," Dr. Kaminsky does not dispute the fact that he made intimidating and harassing phone calls to Dr. Vogler, Dr. Heaney, and their staffs, and sent threatening letters to them. Dr. Vogler was entirely reasonable to conclude that such conduct does not demonstrate the requisite personal qualities necessary to be eligible for re-admission into SLU's residency program.

In the end, although Dr. Kaminsky has meticulously attacked each of Dr.

Vogler's stated reasons for her decision not to hire Dr. Kaminsky for the 2005-2006 and 2006-2007 programs, his arguments fall far short of establishing pretext. His entire theory of pretext rests on his own speculation that Dr. Vogler has been out to get him since the day she discovered that he was seeking a divorce. He claims that Dr. Vogler's harsh treatment triggered the onset of a mental illness that caused him to be aggressive and commit crimes. He cannot discredit Dr. Vogler's stated reasons for her decision not to hire him with speculation alone. See Simpson, 425 F.3d at 543. Because he has failed to present facts which might suggest that Dr. Vogler's actions were based on anything other than her proffered reasons, I will grant summary judgment in favor of SLU on Dr. Kaminsky's disability and religious discrimination claims.

## 2. Retaliation

Dr. Kaminsky also contends that SLU retaliated against him in response to his stated intent to file a charge of discrimination. To make a prima facie case of retaliation, Dr. Kaminsky must show that (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between (1) and (2). Box v. Principi, 442 F.3d 692, 696 (8th Cir. 2006). SLU contends that Dr. Kaminsky's retaliation claim fails because he cannot establish that anyone at SLU knew about his intent to file a charge of discrimination. I agree, and

will grant summary judgment in favor of SLU on this claim.

For a causal nexus to exist between Dr. Kaminsky's stated intent to file a charge of discrimination and St. Elizabeth's decision not to interview him, SLU decision-makers must have known of Dr. Kaminsky's intent to file a charge of discrimination before they took any action to interfere with his interview at St. Elizabeth's.  Robinson v. Potter, 435 F.3d 990 (8th Cir. 2006)(decision-makers must be aware of protected activity); see also  Smith v. Riceland Foods, Inc., 151 F.3d 813, 818 (8th Cir. 1998) (citing Simon v. Simmons Foods, Inc., 49 F.3d 386, 389 (8th Cir. 1995) (stating that a plaintiff must show that "the employer had actual or constructive knowledge of the protected conduct" in order to establish a prima facie case of retaliation), and  Wolff v. Berkley, Inc., 938 F.2d 100, 103 (8th Cir. 1991) (stating that a causal link between statutorily protected activity and an adverse employment action "does not exist if the employer is not aware of the employee's statutorily protected activity")).

Dr. Kaminsky's retaliation claim rests on a series of conversations that he says took place between Mr. Bondurant, Ms. McCarthy, and Dr. Robacker on March 15, 2005.  According to Dr. Kaminsky, he first informed Mr. Bondurant of his intent to file a charge of discrimination against SLU.  Dr. Kaminsky alleges that Mr. Bondurant then relayed this information to Ms. McCarthy, who then contacted

Dr. Robacker and influenced him not to interview Dr. Kaminsky.  On the morning of March 16, Mr. Robacker's office contacted Dr. Kaminsky to cancel his interview.  If each of these allegations were true, Dr. Kaminsky might be able to make out a prima facie case of retaliation.  Dr. Kaminsky, however, has failed to present any evidence from which I can reasonably infer that these conversations took place.

The undisputed record establishes that Dr. Kaminsky and Mr. Bondurant spoke on March 15, 2005, and that Dr. Kaminsky informed Mr. Bondurant that he intended to file a charge of discrimination against SLU.  The undisputed record also establishes that Mr. Robacker's office cancelled Dr. Kaminsky's interview the next morning.  Admittedly, if Dr. Kaminsky could demonstrate that SLU knew about his intent to file a charge of discrimination, the temporal proximity of these two events might suggest a causal relationship.  See Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001) (referencing cases which accept mere temporal proximity as sufficient to show the causality necessary for a prima facie case).  Coincidental timing, however, is rarely sufficient to establish a prima facie case of retaliation.  Kipp v. Missouri Highway and Transp. Com'n, 280 F.3d 893, 897 (8th Cir. 2002) (citations omitted).  That is especially true where, as here, the plaintiff has failed to present any evidence to demonstrate that the employer had knowledge of the

protected conduct. There is no evidence that Mr. Bondurant contacted anyone at SLU on March 15, 2005 to share the information regarding Dr. Kaminsky's intent to file a charge of discrimination. Indeed, Dr. Vogler, Dr. Heaney, Ms. McCarthy, and Mr. Bondurant have all testified that no such conversation took place. Dr. Vogler, Dr. Heaney, and Ms. McCarthy also stated that they did not know of Dr. Kaminsky's intent to file a charge of discrimination until this lawsuit was filed. Although the Court must view all facts and inferences from those facts in a light most favorable to Dr. Kaminsky, that does not mean that I will speculate that all of these witnesses are lying just because Dr. Kaminsky believes they are. Dr. Kaminsky has provided no evidence to support his allegations, and the witnesses' testimony is uncontested.

Further, even if SLU did know of Dr. Kaminsky's plan to file a charge of discrimination, there is no evidence that anyone at SLU contacted Dr. Robacker to persuade him not to hire Dr. Kaminsky. Dr. Kaminsky says that Dr. Robacker's coordinator told him that she was certain that a call from SLU resulted in the cancellation of his interview. Dr. Kaminsky has not supported this allegation with any non-hearsay evidence, however, and I cannot infer that Dr. Kaminsky's allegations are true simply because Dr. Robacker and his staff did not respond to Dr. Kaminsky's request for the production of documents.

Dr. Kaminsky points to a page of notes taken by his counselor at Chestnut Health Systems in May, 2005, as support for his retaliation claim. Dr. Kaminsky contends that these notes corroborate his allegations, but I disagree. These notes simply refer to the fact that Dr. Kaminsky told the counselor that Mr. Bondurant was upset with Dr. Kaminsky for filing a charge of discrimination with the EEOC. The counselor's notes do not indicate that Mr. Bondurant spoke with anyone at SLU regarding the charge of discrimination, nor do they establish that Mr. Bondurant knew that Dr. Kaminsky had applied to St. Elizabeth's Hospital for a family medicine residency. They do not indicate that anyone at SLU influenced Dr. Robacker's decision not to interview Dr. Kaminsky. Most importantly, of course, they are simply the counselor's notes of what Dr. Kaminsky himself told her, and as such they are no better evidence than the other statements of unsupported speculation that Dr. Kaminsky has made to the court.

In sum, Dr. Kaminsky's retaliation claim is sound in theory, but not in fact. He has produced no evidence from which I can reasonably infer that the cancellation of his interview at St. Elizabeth's was orchestrated by SLU in retaliation for his stated intention to file an EEOC charge. Once SLU has pointed to an absence of evidence on an essential element of his claim, Dr. Kaminsky bears the burden of producing enough evidence to show that there is a genuine factual dispute if he is to

withstand summary judgment. He cannot simply rely on self-serving allegations and speculation.

To the extent that Dr. Kaminsky claims retaliation based on SLU's failure to hire him into its 2006-2007 program, this claim must also fail. Dr. Kaminsky has failed to present any facts to support such a claim, other than the fact that he filed a charge of discrimination in April, 2005, and was not hired by SLU the following fall. Even if this were sufficient to make out a prima facie case of retaliation, he cannot show that SLU's legitimate reasons for this decision are a pretext for discrimination, as I discussed at length above. See Zhaung v. Datacard Corp., 414 F.3d 849, 857 (8th Cir. 2005)(applying the burden-shifting framework to a retaliation claim).

## Conclusion

Because Dr. Kaminsky has failed to present any evidence from which I can infer that any of SLU's stated reasons for its decision not to hire Dr. Kaminsky are a pretext for discrimination, I will grant SLU's motion for summary judgment as to Dr. Kaminsky's disability and religious discrimination claims. Additionally, I will grant SLU's motion for summary judgment as to Dr. Kaminsky's retaliation claims because he failed to present any evidence to suggest that SLU knew of his intent to file a charge of discrimination or influenced St. Elizabeth's decision not to interview

him.

I have no doubt that Dr. Kaminsky believes the things he has alleged here. I also have no doubt that he suffers from some form of mental illness, although I need not decide whether this is a disability as defined by the ADA. The medical records produced indicated that the mental illness has been well-controlled with appropriate medication in the past. Dr. Kaminsky testified in his deposition that he has not taken medication for more than a year, and his filings in this case show a pattern of irrational thought that appears consistent with the medical evidence in the record. His lack of medication may indicate that his illness, whatever it is, is not presently under control, and that may be part of the reason that he believes the allegations he has made here. His own beliefs, however, are not evidence, and sincerity of belief, without evidence, is not sufficient to withstand summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Saint Louis University School of Medicine's motion for summary judgment [# 100] is granted.

A separate judgment in accord with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 16th day of August, 2006.